# Issuance of a Preferred Stock Dividend
# by the Federal Home Loan Mortgage Corporation

The Federal Home Loan Mortgage Corporation is authorized, under 12 U S.C. § 1455(f), to issue a dividend of preferred stock to its shareholders, the Federal Home Loan Banks. The Federal Home Loan Banks are further authorized to distribute that stock as a dividend to their shareholders.

January 25, 1985

MEMORANDUM OPINION FOR THE COUNSEL TO THE DIRECTOR,
OFFICE OF MANAGEMENT AND BUDGET, AND THE CHAIRMAN,
FEDERAL HOME LOAN BANK BOARD

This responds to the request of the Counsel to the Director, Office of Management and Budget (OMB), for the opinion of this Office concerning the issuance by the Federal Home Loan Mortgage Corporation (FHLMC) of a preferred stock dividend to its shareholders, the twelve Federal Home Loan Banks (FHL Banks).

OMB contends that the preferred stock dividend was unlawful because the FHLMC is statutorily authorized only to sell preferred stock and not to issue a preferred stock dividend. In contrast, the FHLMC and the Federal Home Loan Bank Board take the position that the preferred stock dividend should be considered as two separate transactions, the preferred stock dividend from the FHLMC to the FHL Banks, and the separate dividend of this FHLMC preferred stock declared by the FHL Banks to their shareholders. The FHLMC argues that each of these transactions was permissible under the applicable statutes. The FHLMC's outside counsel has also taken the position that the transaction was authorized by statute.

We conclude that the FHLMC's analysis is correct, and that the FHLMC was statutorily authorized to issue the preferred stock and to distribute it as a stock dividend.[1] We are aware of no facts or legal authorities that even remotely support the conclusion that the preferred stock transaction was unlawful.

---

[1] We take no position with respect to whether the FHLMC was financially in a position to pay such a dividend. That factual question is beyond the expertise of this Office and, in any case, we do not understand that this issue has been raised as a question of either fact or law.

19

# I. Background

The FHLMC is a corporate instrumentality of the United States created by the Federal Home Loan Mortgage Corporation Act (FHLMC Act), 12 U.S.C. §§ 1451–1459. The FHLMC was established primarily for the purpose of increasing the availability of mortgage credit for housing by assisting in the development of secondary markets for conventional mortgages, which in turn increases the liquidity of residential mortgage investments. The FHLMC carries out this task principally through the purchase of first lien, conventional residential mortgages from mortgage lending institutions and the resale of these mortgages in the form of guaranteed mortgage securities.

The FHLMC is governed by a Board of Directors that consists of the members of the Bank Board, who also have responsibility for overseeing the Federal Savings and Loan Insurance Corporation. *See id.* § 1452(a). The FHL Banks provided the FHLMC's initial capital of $100 million and now own all of the FHLMC's common stock. *See id.* § 1453. Since 1981, the Board of Directors of the FHLMC has paid cash dividends periodically to the FHL Banks. The FHL Banks are all separate corporate instrumentalities of the United States, which were created pursuant to the Federal Home Loan Bank Act, *id.* §§ 1421–1436. Each FHL Bank is governed by a board of directors, the majority of which is elected by the FHL Bank stockholders, with the remainder being appointed by the Bank Board. *See id.* § 1427. The stockholders of each FHL Bank are various financial institutions (principally savings and loan associations) that have subscribed for and own stock in that FHL Bank. *See id.* § 1426.

We understand that the FHL Banks historically have paid dividends to their stockholders in the form of both cash and shares of stock in the FHL Bank. *See* 12 C.F.R. § 522.6. We also understand that cash dividends paid by the FHLMC to the FHL Banks generally have been passed through by each FHL Bank to its stockholders. The transaction at issue was initiated when the Board of Directors of the FHLMC adopted resolutions creating the preferred stock and authorizing the issuance and distribution of the preferred stock to the FHL Banks in proportion to their respective holdings of the FHLMC's common stock. In December 1984, each FHL Bank declared a dividend, consisting of the shares of the preferred stock issued to that FHL Bank, to its members of record as of the close of business on December 31, 1984. These FHL Bank dividends were subsequently approved by a resolution of the Bank Board.

# II. Analysis

We concur with the position of the FHLMC that the question presented raises two separate legal issues: (1) whether the FHLMC was statutorily authorized to issue a preferred stock dividend to the FHL Banks; and (2) whether the FHL Banks were authorized to pass this preferred stock on as a dividend to their shareholders.

## A. *The Validity of the FHLMC Preferred Stock Dividend*

OMB does not dispute that the FHLMC is statutorily authorized to issue dividends to the holders of its common stock.[2] *See* 12 U.S.C. § 1453(d). Thus, the only question is whether the dividend may be in the form of preferred stock. Both OMB and the FHLMC agree that the only directly relevant statutory authority with respect to the first issue is contained in 12 U.S.C. § 1455(f).[3] This section was added to the FHLMC Act in 1982 as § 6 of an act that extended a number of federal housing programs. *See* Pub. L. No. 97–289, § 6, 98 Stat. 1230, 1232 (1982 Act). In 1984, further language was added to this provision by § 211 of the Secondary Mortgage Market Enhancement Act of 1984. *See* Pub. L. No. 89–440, § 211, 98 Stat. 1689, 1697 (1984 Act). These enactments will be considered separately below.

### 1. The 1982 Act

As originally enacted, § 1455(f) read: "The Corporation may have preferred stock under such terms and conditions as the Board of Directors shall prescribe. Any preferred stock shall not affect the status of the capital stock issued under § 1453 as nonvoting common stock." This statute sets forth a broad and unambiguous delegation of authority to the Board of Directors of the FHLMC to issue preferred stock "on such terms and conditions as the Board of Directors shall prescribe." There is no restriction stated in the statute on what the FHLMC may do with the preferred stock once it is issued.[4] Given this broad statutory power granted to the FHLMC by § 1455(f) with respect to the issuance of preferred stock, and its subsequent disposition, there seems to be ample power to issue the preferred stock in the form of a dividend to holders of its common stock, as the FHLMC has done in this case.

This conclusion is supported by the general rule that the issuance of stock dividends is generally within the power of a corporation:

> In the absence of a constitutional or statutory prohibition, if the directors of the corporation, acting in good faith, are of the opinion that it is for the best interests of the corporation and its stockholders to retain profits in the business of the corporation, or as a surplus fund to meet future needs, instead of dividing them among the stockholders as a dividend in cash or property, it is within their discretion to do so and to pay a dividend by issuing reserved or additional stock.

---

[2] In fact, OMB urges the payment in these circumstances of a cash dividend instead of a stock dividend.

[3] We note that the FHLMC Act states that, except as otherwise provided by the Act or by subsequent laws "expressly in limitation of the provisions" of the Act, "the powers and functions of the Corporation and of the Board of Directors shall be exercisable, and the provisions of this chapter shall be applicable and effective, without regard to any other law." *Id.* § 1459.

[4] OMB takes the position that "[t]he issue is not the legality of *having* such stock outstanding — we fully concede this; *the issue, rather, is the terms and conditions upon which such stock may be* issued." OMB further concedes that § 1455(f) authorizes the FHLMC to sell the preferred stock to the public, notwithstanding that the statute does not specifically discuss what the FHLMC may do with the stock once it is issued.

21

11 M. Wolf, *Fletcher Cyclopedia of the Law of Private Corporations* § 5360, at 742 (1971) (footnote omitted).

Despite the apparent clarity of this statutory authorization, OMB contends that the legislative history of the 1982 Act demonstrates that the provision was not intended to authorize a preferred stock dividend. OMB points to the remarks of Representative Gonzalez, who made the following statement on the floor of the House with respect to the provision that became § 1455(f):

> The resolution would also provide the Federal Home Loan Mortgage Corporation with the authority to issue preferred stock. The intent of this provision is to enable the Mortgage Corporation to contribute to a housing recovery by allowing it to increase its purchases of newly originated mortgages during the hoped for housing recovery in 1983. It will also enable the Mortgage Corporation to continue its highly successful SWAP Program at current volume levels should this need continue.

128 Cong. Rec. 25946 (1982). OMB argues that this statement demonstrates that the preferred stock provision was enacted only for the purpose of raising capital and therefore that preferred stock may only be sold and not issued as a dividend. We disagree with this conclusion for a number of reasons.

First, a fair reading of Representative Gonzalez's statement does not necessarily support the conclusion for which it has been cited by OMB. Representative Gonzalez simply stated that raising or preserving capital was the principal purpose for which the provision was adopted; his statement does not evince an affirmative intent to deny the authority to issue preferred stock for other reasons. It is frequently the case that a statute enacted for a particular purpose or to meet a particular need is subsequently utilized for additional purposes because of its broad language. *See* 2A C. Sands, *Sutherland Statutory Construction* § 49.02 (3d ed. 1973). Thus, the mere description of this provision's principal purpose does not limit its use to that purpose, in contravention of the clearly applicable broad language of the statute itself.

Second, even if Representative Gonzalez's statement supported the restriction of the broad language of the statutory authorization to the purpose of raising or preserving capital, the declaration of a preferred stock dividend would not necessarily be inconsistent with such a purpose. Given the decision of the Board of Directors to issue some form of dividend, the logical alternative to a stock dividend would have been a cash dividend. In fact, the issuance of a cash dividend is precisely the alternative that OMB recommends that the FHLMC adopt. By issuing a dividend of preferred stock rather than cash, the FHLMC is preserving capital for the expansion of its programs in a manner that is consistent with Representative Gonzalez's statement of the purpose of the provision. If one assumes that the FHLMC decided to issue a dividend of some kind, the issuance of that dividend in the form of preferred stock had essentially the same effect of enhancing the capital position of the FHLMC as would the sale of preferred stock. For these reasons, not only is the legislative history not

22

inconsistent with the clear language of the statute, but it supports the import of the language that the FHLMC has authority to issue a preferred stock dividend.

Finally, even if the legislative history were clearly contrary to the FHLMC's position, it would not overcome the unambiguous statutory language. As the Supreme Court recently emphasized:

> While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most extraordinary showing of contrary intentions from these data would justify a limitation on the "plain meaning" of the statutory language. When we find the terms of a statute unambiguous, judicial inquiry is complete, except in "'rare and exceptional circumstances.'"

*Garcia* v. *United States*, 469 U.S. 70, 75 (1984) (quoting *TVA* v. *Hill*, 437 U.S. 153, 187 n.33 (1978)). The use of legislative history is "only admissible to solve doubt and not to create it." *Railroad Comm'n* v. *Chicago, B. & Q. R.R.*, 257 U.S. 563, 589 (1922). Moreover, the cited legislative history is not even in the form of a committee report, but is the statement of a single legislator on the floor of one House. "The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corp.* v. *Brown*, 441 U.S. 281, 311 (1979). Thus, the legislative history does not alter our conclusion that the transaction was authorized by the clear language of the statute.

Although OMB does not argue that any other statutory provision expressly prohibits the FHLMC from declaring and paying a preferred stock dividend, OMB contends that the transaction is prohibited by the purpose of the FHLMC Act as derived from other provisions. OMB argues that the FHLMC was prohibited from issuing the preferred stock dividend because the purpose of the stock dividend was primarily to enhance the capital of the member thrift institutions, which OMB regards as inconsistent with the FHLMC's statutory function. OMB argues that the FHLMC is authorized only to provide secondary mortgage market liquidity and not to boost the financial position of member thrift institutions, relying upon 12 U.S.C. § 1454 and *Association of Data Processing Service Organizations* v. *Federal Home Loan Bank Board*, 568 F.2d 478, 486–89 (6th Cir. 1977). Therefore, the argument goes, any action (such as the payment of a preferred stock dividend) that is directed toward the latter purpose is beyond the power of the FHLMC.

In this instance, however, nothing in the statute or in the legislative history restricts the discretion of the Board of Directors in the manner suggested by OMB. The problem with OMB's argument is that the purpose of the issuance of a dividend is to benefit the stockholders. Because OMB concedes the FHLMC's authority to issue dividends, it must also concede the validity of that purpose. Thus, even if the preferred stock dividend were intended to support the balance sheets of member institutions, it would not be improper on that basis alone. Section 1454, which OMB cites as a limitation on the purposes of the FHLMC,

23

is simply an authorization to engage in the purchase and sale of mortgages, and not a restriction on the purposes for which preferred stock may be issued.[5]

*Data Processing Service Organizations* is similarly inapposite. In that case, the United States Court of Appeals for the Sixth Circuit held that because of the express statutory restriction against an FHL Bank engaging in outside business, it was improper for an FHL Bank to sell data processing services to savings and loan institutions. In that case, however, not only was there no express statutory authorization to undertake the questioned activity, there was a specific prohibition against the FHL Bank engaging in that business. In the present instance, the FHLMC has authority to issue dividends and has express statutory authority to issue preferred stock on such terms as the Board of Directors prescribes, and utilizing such preferred stock to pay a dividend to the common shareholders is not inconsistent with any of the authorized purposes or responsibilities of the corporation.

OMB also argues that the dividend transaction is an unlawful effort to circumvent the statutory provisions that establish a particular capital structure for the FHLMC. Specifically, OMB contends that the preferred stock is essentially common stock without the express statutory requirements imposed by Congress on FHLMC common stock. *See* 12 U.S.C. § 1453. OMB notes that FHLMC common stock may be issued only to FHL Banks and may be recalled for retirement by the FHLMC, but that no such restrictions apply to the preferred stock. OMB then argues that, because the preferred stock is entitled to receive the first $10 million in dividends declared by the FHLMC and 90 percent of any additional dividends, and because preferred shareholders would receive, in any liquidation of the FHLMC, 90 percent of the remaining assets of the corporation, the preferred stock amounts in essence to common stock issued without compliance with the statutory restrictions that must accompany the FHLMC's common stock. This argument is based upon OMB's understanding that these terms and conditions vest "the principal attribute of common stock — the right to enjoy the unrestricted earnings (and, in liquidation, the unrestricted assets) of the enterprise — on this 'preferred'" stock.

This argument is ill-founded because it simply challenges the discretionary judgment vested in the Board of Directors to establish the terms and conditions under which the FHLMC may issue preferred stock. OMB has not suggested any reason to doubt that the stock issued as a dividend is in fact preferred stock. Moreover, § 1455(f) specifically empowers the FHLMC to issue preferred stock "on such terms and conditions as the Board of Directors shall prescribe," as long as the preferred stock does not affect the status of the capital stock issued under § 1453 as nonvoting common stock. The statute does not require that preferred stock have the same restrictions as common stock.

---

[5] Section 1454 does not contain any statement of the purpose of the FHLMC. It authorizes the purchase of mortgages, just as § 1455 authorizes the FHLMC to create certain obligations and securities. If OMB were correct in its argument, the FHLMC would also be precluded from paying a cash dividend as well, rather than using the funds to purchase mortgages. OMB concedes, however, that the issuance of a cash dividend is permissible. Moreover, OMB has not questioned whether the issuance of a dividend under the present circumstances is contrary to good business judgment.

24

In this instance, the terms and conditions established by the Board provide a preference to dividends to the holders of the preferred stock over the holders of common stock, the very essence of a preferred stock issue. *See* 11 M. Wolf, *Fletcher Cyclopedia of the Law of Private Corporations* § 5283, at 526 (1971). The common stock remains unchanged in all other aspects. We are not aware of any evidence that the Board in this transaction has abused the broad discretion vested by this statutory provision with respect to the prescription of the terms and conditions upon which preferred stock will be issued.[6]

Thus, based upon the clear statutory language of § 1455(f), as originally adopted in 1982, the issuance of a preferred stock dividend seems to be fully within the authority of the FHLMC.

## 2. The 1984 Amendment

Section 1455(f) was amended in 1984 by the addition of the language highlighted below:

> The Corporation may have preferred stock on such terms and conditions as the Board of Directors shall prescribe. Any preferred stock shall not affect the status of the capital stock issued under § 1453 of this title as nonvoting common stock *and shall not be entitled to vote with respect to the election of any member of the Board of Directors. Such preferred stock, or any class thereof, may have such terms as would be required for listing of preferred stock on the New York Stock Exchange, except that this sentence does not apply to any preferred stock, or class thereof, the initial sale of which is made directly or indirectly by the Corporation exclusively to any Federal Home Loan Bank or Banks.*

98 Stat. at 1697.

OMB argues that the last sentence indicates that § 1455(f) "contemplates the *sale* only of preferred stock — a result which expressly proscribes the proposed transaction." In our view, however, the amendment contains no clearly expressed intent to alter the broad authority of the 1982 Act with respect to the issuance of a preferred stock dividend. Because we have concluded that the 1982 Act authorized the FHLMC to issue a preferred stock dividend, it would have been necessary for Congress expressly to eliminate that authorization in the 1984 Act in order to preclude the transaction at issue.[7] We find no such evidence of congressional intent in either the language of the statute or its

---

[6] We note, in addition, that the terms and conditions of the preferred stock also provide the Board with discretion to issue additional preferred stock, which could be either junior, senior, or equal to the outstanding preferred stock.

[7] It is axiomatic that the views of a subsequent legislature are not probative legislative history with respect to the meaning of a previously adopted statute. *See United States* v. *Philadelphia Nat'l Bank*, 374 U.S. 321, 348–49 (1963). Thus, unless the amendment were actually intended to alter the authority granted in the 1982 Act, it would not prohibit the preferred stock dividend.

25

legislative history. First, the language of the amendment itself does not even remotely suggest that only the sale of preferred stock is permitted. The word "sale" appears in the amendment only as part of the exception to the provision that FHLMC preferred stock may meet New York Stock Exchange (NYSE) listing standards.[8] This one reference in the amendment is hardly sufficient to impose a significant restriction on the authority granted in 1982.

Moreover, the legislative history of the provision indicates precisely the opposite of OMB's argument. The Senate report on the bill referred to the amendment as "follow-on provisions to authority granted in earlier legislation permitting the FHLMC to issue preferred stock. The earlier legislation failed to prescribe any standards or conditions for issuance of such stock." S. Rep. No. 293, 98th Cong., 1st Sess. 10 (1983). This statement suggests both that Congress recognized that it had authorized the FHLMC to "issue" preferred stock and not simply to sell it, and that the grant of such authority was exceptionally broad and unrestricted. Nothing in the legislative history of the 1984 Act suggests an intent to preclude the issuance of the preferred stock dividends.

## B. The Validity of the FHL Bank Dividends

The final question that remains with respect to the preferred stock dividend transaction is whether the individual FHL Banks were statutorily authorized to pass on the FHLMC preferred stock to their stockholders as a dividend. Although OMB has not challenged this aspect of the transaction, we discuss this issue in order to provide a complete response.

This question is governed by 12 U.S.C. § 1436, which sets forth the terms and conditions under which the FHL Banks may pay dividends to their stockholders. This section generally authorizes the FHL Banks to pay dividends to their shareholders, with the following restrictions: (1) all dividends must be approved by the Bank Board; and (2) dividends may be paid only out of net earnings remaining after all reserves and charge-offs required by the statute have been provided for, except that if the Bank Board "determines that severe financial conditions exist threatening the stability of member institutions, the Board may suspend temporarily these requirements and permit each Federal Home Loan Bank to declare and pay dividends out of undivided profits." 12 U.S.C. § 1436(b).

All of these requirements seem to have been fulfilled with respect to the FHL Banks' dividends of FHLMC preferred stock. First, we understand that the

---

[8] The language of the amendment might be read to *permit* the issuance of preferred stock with terms that would allow listing on the NYSE (NYSE terms) except when the stock is sold to FHL Banks. If that were true, then there might be some question whether the FHLMC was authorized to issue this stock to the FHL Banks with the NYSE terms. The Senate report states, however, that the provision was intended to "require" that preferred stock include the NYSE terms and that the exception was intended to indicate that "[p]referred stock sold by the FHLMC exclusively to any Federal Home Loan Bank or Banks will not be *required* to meet otherwise applicable New York Stock Exchange requirements and can be sold upon whatever terms and conditions [the FHLMC's] Board of Directors chooses to include." S. Rep. No. 293, 98th Cong., 1st Sess. 10 (1983). Thus it seems clear that the inclusion of the NYSE terms was permissible.

Bank Board has expressly approved all of the preferred stock dividends declared by the FHL Banks. Second, we also understand that the Bank Board has determined, by formal resolution, that severe financial conditions exist threatening the stability of member institutions. OMB has not suggested that this finding was in any way improper. Therefore, this finding satisfied the requirements of § 1436 and permitted the FHL Banks to transfer the FHLMC preferred stock as a dividend to their shareholders.

## Conclusion

In conclusion, we find that the two preferred stock dividend transactions were authorized under applicable statutes. First, the FHLMC acted pursuant to clear statutory authority in granting a preferred stock dividend to the FHL Banks. Second, the FHL Banks were similarly empowered to transfer that preferred stock as a dividend to their shareholders.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*

27